**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eva Kristina Stalbrand, | No. CV-25-02656-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

    Eva Kristina Stalbrand ("Plaintiff"), who is proceeding *pro se*, initiated this action in Maricopa County Superior Court against the City of Phoenix ("the City") and Crawford and Company, Inc. ("C&C"), the City's third-party claims administrator (collectively, "Defendants"), asserting various claims arising from a June 2024 incident in which a City garbage truck drove into Plaintiff's unoccupied parked car.  (Doc. 1-1.)  After the case was removed to federal court, each Defendant filed a motion to dismiss and the City moved to strike Plaintiff's surreply.  (Docs. 7, 18, 27.)  All three motions are now fully briefed.  (Docs. 22, 23, 24, 25, 28.)  For the reasons that follow, all three motions are granted.

**RELEVANT FACTUAL ALLEGATIONS**

    The following factual allegations, presumed true, are set forth in the complaint. (Doc. 1-1.)

    On June 24, 2024, a City equipment operator drove into Plaintiff's parked car, totaling it.  (*Id.* at 3-4.  *See also id.* at 15 ["City of Phx garbage truck drove forward into my car that was parked outside the locked gate of my fenced in front yard."].)  After the

accident, the City "[r]efused [to] provide" Plaintiff with "[r]easonable [a]ccommodations"—namely, a rental car. (*Id.* at 3.) Plaintiff is "[t]otally [d]isabled" as a result of a spinal cord injury and pulmonary problems, is "confined to a car," and "cannot walk far." (*Id.*)

In July 2024, Plaintiff brought her car to Camelback Collision Center for a repair estimate. (*Id.*) The Camelback Collision Center estimated a repair cost of $11,991.72 but "would not repair" the car due to "safety issues." (*Id.*) The City failed to "pay for [the] inspection" and "parking costs on [Camelback Collision Center's] lot." (*Id.*)

In August 2024, Plaintiff filed a claim form with the City pursuant to A.R.S. § 12-821.01. (*Id.* at 13-17.)

In December 2024, Plaintiff received an initial settlement offer from the adjuster at C&C. (*Id.* at 3.)

In January 2025, Plaintiff received by mail "the same settlement offer as in Dec[ember] 2024 in spite of" Plaintiff "pointing out" that the first settlement offer relied on the "wrong mileage [information] for [the] evaluation of [her] car." (*Id.*)

Plaintiff "could not wait any longer," so she, herself, "calculated [an] evaluation of [her] car" and "emailed" her evaluation to the C&C adjuster. (*Id.* at 4.)

In March 2025, Plaintiff received another offer that was "2 offers [and] lies." (*Id.*)

In support of these allegations, Plaintiff attaches various exhibits to the complaint. (*Id.* at 6-136.) Plaintiff asserts a total of seven claims: (1) "Federal Law OSHA, DOT, City of Phoenix Policies & Procedures," apparently premised on "[n]egligence" by the City's equipment operator; (2) "Violation of American with Disabilities Act (ADA) for Public Accommodation" premised on the City's failure to provide her with alternative transportation (i.e., a rental car); (3) the City's violations of "its own policies [and] procedures reg[arding] paying for inspection [and] other costs to Camelback Collision Center"; (4) the adjuster's violation of A.R.S. § 12-821.01 based on Plaintiff's receipt of the allegedly "invalid" settlement offer in December 2024; (5) the adjuster's second violation of A.R.S. § 12-821.01 based on Plaintiff's receipt of the same "invalid"

1  settlement offer a month later; (6) a "breach" by the adjuster after Plaintiff "had to evaluate
2  [her] car [her]self"; and (7) the adjuster's additional violation of A.R.S. § 12-821.01
3  premised on the final settlement offer. (*Id.*)

4        Plaintiff seeks damages for her totaled car in the amount of $11,991.72 as quoted
5  by the Camelback Collision Center; for the cost of Uber trips; for costs associated with
6  missed doctor, veterinarian, and therapy visits; for physical damages (namely, "Sleep
7  Disorder, Constant Headache, stress, anxiety, Spinal cord injury, PTSD, Irritable Bowel
8  Syndrome, grinding teeth-break"); and for mental damages, including "Inten[t]ional
9  infliction of emotional[] [d]istress" ("IIED"). (*Id.* at 4-5.)

## DISCUSSION

I. <u>Legal Standard</u>

      Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

      Courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Conclusory and vague allegations, however, will not support a cause of action. *Ivey v. Bd. of Regents of the Univ.*

*of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  A liberal interpretation may not supply essential elements of the claim that were not initially pleaded.  *Id.*

II.   The City's Motion To Strike Plaintiff's Surreply

Before addressing the City's motion to dismiss, the Court first considers the City's motion to strike Plaintiff's surreply.

A.   **The Parties' Arguments**

On October 6, 2025, Plaintiff filed a surreply regarding the City's motion to dismiss, titled "Plaintiff's Response to Defendant City's Reply In Support Of Its Motion To Dismiss."  (Doc. 26 at 1.)  Among other things, the surreply attached what appear to be Google search results, including AI-generated search results, for complaints against C&C's services.  (*Id.* at 3-17.)

The City moves to strike the surreply "[p]ursuant to Fed. R. Civ. P. 7 and LRCiv 7.2(m)."  (Doc. 27 at 1.)  The City argues that "Plaintiff has not sought leave to file a sur reply, nor is one warranted under the circumstances."  (*Id.* at 2.)  The City further argues that "[t]he local rules and applicable case law make clear that sur replies are generally disfavored and permitted only in limited circumstances."  (*Id.*)  And the City argues that the City's "reply brief does not introduce any new legal theories, factual assertions, or evidence that would justify supplemental briefing."  (*Id.*)

In response, Plaintiff asks the Court to consider several "mitigating factors" that purportedly explain why the information provided in her surreply was not included in her opposition to the City's motion to dismiss.  (Doc. 28 at 1-2.)  Among other things, Plaintiff argues that she was "medically incapacitated . . . due to financial, physical and mental hardship[] caused by" the City; that her "reply was complete on the issues Plaintiff *could* address"; and that she "was prevented from completing the remaining claims due to illness."  (*Id.* at 1.)  Plaintiff also argues that the "City of Phoenix, City Clerk's Office has not already in *November 2024* provided necessary documentation and documents to deal with [her] case."  (*Id.* at 2.)  Referring to her surreply (not her opposition), Plaintiff argues that her "*partial response* . . . to 'Defendant City's Reply in Support of its Motion to

Dismiss'" was "due to illness" and that it "allowed Plaintiff to at least address the most important issue[s]." (*Id.*)  Plaintiff also argues that "all the lies and the abundance and bombardment of information (correct and incorrect) piled up together . . . in [the City's] *Final* Reply in Support of its Motion to Dismiss . . . is a tactic and procedural game to confuse Plaintiff, to avoid [the] merits of Plaintiff's case and to exhaust Plaintiff as [a] self representing litigant." (*Id.* at 3.)  Plaintiff argues the City's motion to strike should be denied "considering mitigating circumstances such as Plaintiff's severe medical condition which significantly impacted Plaintiff's ability to seek leave to file a sur reply timely" and because her "sur reply contains information crucial to [her] defense" such that striking the surreply "would be *unjust*." (*Id.* at 4.)

B. **Analysis**

Under LRCiv 7.2(m)(1), "a motion to strike may be filed . . . if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order."  As the City correctly notes, "[s]ur-replies and sur-responses are not authorized by Federal Rule of Civil Procedure 7, any other Federal Rule of Civil Procedure, or the District of Arizona's Local Rules, absent prior leave of court." *Lane v. Rocket Mortg. LLC*, 2025 WL 2229923, *2 (D. Ariz. 2025).  Here, Plaintiff did not seek leave of Court to file a surreply.

Even if Plaintiff had sought leave of Court, "[s]ur-replies are highly disfavored and permitted only in extraordinary circumstances," and "[a]lthough the Court may in its discretion allow the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fitzhugh v. Miller*, 2020 WL 1640495, *9 (D. Ariz. 2020) (citations omitted).  Those circumstances are not present here.  Nor does the Court agree that Plaintiff's proposed "mitigating factors" justify her surreply, particularly because the new information Plaintiff seeks to raise (i.e., Google search results for complaints *against C&C*) has nothing to do with the arguments raised with respect to *the City's* motion to dismiss.  Accordingly, the City's motion to strike is granted.

III. <u>The City's Motion To Dismiss</u>

As an initial matter, it's unclear from the face of the complaint whether all seven claims are asserted against the City. On the one hand, a plain reading of the complaint suggests that only Counts One through Three are asserted against the City, as each of those claims mentions the City whereas Counts Four through Seven all reference an "Adjuster," such that those claims appear to be brought only against C&C. (Doc. 1-1 at 4.) On the other hand, the City's motion argues that all seven claims, including Counts Four through Seven, should be dismissed against it. (Doc. 7.) Accordingly, and in an abundance of caution, the Court assumes that all seven claims are asserted against the City.

### A. **The Parties' Arguments**

The City moves to dismiss pursuant to Rules 8(a) and 12(b)(6). (Doc. 7 at 1.) First, the City argues that the claims in the complaint fail to meet the Rule 8 pleading standard because "Plaintiff's Complaint is vague, ambiguous, and unintelligible to the point it fails to provide [the City] with fair notice of the claims being asserted." (*Id.* at 4.) The City argues that "[i]t is nearly impossible to discern the factual or legal basis for [Plaintiff's] allegations, or which . . . defendants are being sued under each cause of action." (*Id.*) The City further argues that "Plaintiff also includes over one hundred pages of unverified exhibits without any context or explanation, further compounding the confusion." (*Id.*) As for Count One, the City argues that the complaint "uses isolated terms such as 'negligence,' 'lack of judgment,' and 'impaired,' but fails to connect these phrases to any facts or legal claims." (*Id.*) As for Count Two, the City argues that the complaint "fails to identify how the statute [ADA] applies to the facts of the case." (*Id.*) As for Counts Three through Seven, the City argues that the complaint "either reference[s] A.R.S. § 12-821.01 in passing or cites no legal authority at all." (*Id.*)

Second, the City argues that the ADA clam in Count Two also fails on the merits. (*Id.* at 5.) The City argues that the complaint raises a public accommodation claim under Title III of the ADA, but "Title III does not apply" to the City because "it is clearly not a private entity." (*Id.*) The City further argues that "even giving Plaintiff the benefit of the

doubt that she meant to bring her ADA claim under Title II, Public Services, her claim would still fail" because "she has not alleged why she was qualified to receive any benefit from [the City]" and "has not alleged that [the City] failed to accommodate her because of her disability, as opposed to other reasons." (*Id.* at 5-6.)

Third, the City argues that Counts Three through Seven all "allege violations of A.R.S. § 12-821.01" but "§ 12-821.01 does not impose any affirmative duties on governmental entities" and instead "establishes procedural prerequisites for claimants who seek to bring actions against public entities or employees." (*Id.* at 6.) The City argues that "[t]he statute outlines the steps a claimant must take to preserve their right to sue; it does not create substantive rights or obligations upon government to take certain actions upon being notified of potential claims." (*Id.* at 7.) And the City argues that under § 12-821.01, "[t]here is no requirement that the City respond to a claim, offer a settlement, or pay for inspections—let alone at a facility of Plaintiff's choosing." (*Id.*)

In response, Plaintiff appears to argue, for the first time, that she is bringing claims under A.R.S. § 12-820.01. (Doc. 22 at 1-2.) Plaintiff reiterates that the "City's Equipment Operator . . . recklessly drove into Plaintiff's car," causing damage to the car and rendering it "undrivable and unrepairable." (*Id.* at 2.) Plaintiff alleges that "[n]o alternative transportation" has been "offered by" the City. (*Id.*) Plaintiff argues that the City and C&C "took 7 months for final offer" and asserts that this delay violates A.R.S. § 12-821.01. (*Id.*) Plaintiff also appears to allege a new claim for violation of the Unfair Claims Settlement Practices Act under A.R.S. § 20-461. (*Id.* at 3.) After reiterating the facts from her complaint (*id.* at 3-4), Plaintiff argues that she "is totally disabled with PTSD, and spinal cord injury (back pain), requiring vehicle dependence" and cites several provisions of the ADA. (*Id.* 4-5.) Plaintiff argues that she "[r]equested reasonable accommodations [which] were denied over the phone and on [the] Claim form." (*Id.* at 5.) Next, Plaintiff clarifies that she "is seeking [d]amages for . . . IIED" and outlines the Arizona common-law requirements for such an action. (*Id.* at 5-6.) Ultimately, Plaintiff "request[s] that the Court deny" the City's motion. (*Id.* at 6.)

- 7 -

In reply, the City argues that Plaintiff's "[r]esponse provides no additional clarity to her Complaint and only adds to the confusion." (Doc. 24 at 1.) The City argues that the complaint fails to "articulate which of the Defendants she is attempting to sue under each cause of action." (*Id.*) As for Plaintiff's ADA claim, the City reiterates that "Title III does [not] apply to public entities" like the City and that the complaint "still does not support a claim under Title II." (*Id.* at 2.) Next, the City reiterates that "Plaintiff cannot hold [the] City liable pursuant to ARS § 12-821.01 as it does not impose any affirmative duties on government entities." (*Id.* at 3.) And the City argues that A.R.S. § 20-461 "regulates the insurance industry, not a public entity's risk management department." (*Id.*) Finally, the City argues that "Plaintiff's response improperly attempts to assert a new state law [IIED] claim that is not in her Complaint" and that "even if it were proper for her to amend her Complaint through her response, her response merely sets out the elements of an [IIED] claim" but "provides no factual support for her claim." (*Id.* at 4.)

### B. **Count One**

The Court agrees with the City that Count One fails to satisfy the pleading requirements of Rule 8. Count One vaguely cites as legal authority "Federal Law OSHA, DOT, City of Phoenix Policies & Procedures." (Doc. 1-1 at 4.) These fleeting references fail to put the City on notice of what cause of action is being asserted against it. To the extent Count One is premised on a negligence theory, negligence is a cause of action that would be brought under state, not federal, law. Under Arizona law, a negligence claim requires proof of "a duty, a breach of that duty, causation, and damages." *Roebuck v. Mayo Clinic*, 575 P.3d 375, 382 (Ariz. 2025) (citation omitted). The complaint must allege "sufficient factual matter" to support that the City was negligent. *In re Fitness Holdings Int'l, Inc.*, 714 F.3d at 1144. Here, the complaint fails to do that and instead vaguely asserts phrases such as "Lack of judgment," "impaired," and "Substance Abuse Test." (Doc. 1-1 at 4.) Accordingly, Count One is dismissed pursuant to Rule 8.

### C. **Count Two**

"The ADA contains five titles: Employment (Title I), Public Services (Title II),

Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V)." *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1172 (9th Cir. 1999). "Title II is the portion of the ADA that applies to state and local governments"; "[i]n contrast, Title III of the ADA, which governs places of public accommodation, imposes more stringent requirements aimed at ensuring that every *facility* is equally accessible to disabled persons." *Cohen v. City of Culver City*, 754 F.3d 690, 694-95 & n.4 (9th Cir. 2014). Count Two asserts a violation of the ADA "for Public Accommodation"—in other words, Count Two is brought under Title III. (Doc. 1-1 at 4.) The City is correct that "Title III does not apply to [it] as it is clearly not a private entity." (Doc. 7 at 5.) *See generally Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) ("An individual alleging discrimination under Title III must show that . . . the defendant is a private entity that owns, leases, or operates a place of public accommodation . . . ."); *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997) ("Title III of the ADA applies to private entities providing public accommodations, . . . not to public entities."). Therefore, to the extent Plaintiff brings Count Two under Title III of the ADA, that claim is dismissed.

To the extent Count Two was intended to be brought under Title II of the ADA (Public Services), the claim still fails. To prevail on such a claim, a plaintiff "must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (cleaned up). Here, even assuming that Plaintiff is a "qualified individual with a disability," the complaint fails to allege any facts supporting that (1) there is a service or program offered by the City that Plaintiff was either excluded from or denied the benefits of, and (2) the exclusion/denial was "by reason of her disability." Accordingly, Count Two—even if brought under Title II—fails to state a claim.

D.   **Counts Three Through Seven**

Counts Three through Seven all appear to be premised on alleged violations of A.R.S. § 12-821.01.[1]  Section 12-821.01—titled "Authorization of claim against public entity, public school or public employee"—provides, in relevant part:

> A.   Persons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues.  The claim shall contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed.  The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.  Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.
>
> . . .
>
> E.   A claim against a public entity or public employee filed pursuant to this section is deemed denied sixty days after the filing of the claim unless the claimant is advised of the denial in writing before the expiration of sixty days.

A.R.S. § 12-821.01.  The City is correct that "A.R.S. § 12-821.01 does not impose any affirmative duties on governmental entities" and instead "establishes procedural prerequisites for claimants who seek to bring actions against public entities or employees." (Doc. 7 at 6.)  Thus, Plaintiff's claims premised on alleged violations of § 12-821.01 fail.

What's more, Counts Four, Five, and Seven are premised on the C&C adjuster allegedly taking more than 60 days to respond to Plaintiff's claim, which Plaintiff asserts is a violation of § 12-821.01.  But § 12-821.01 does not require a response to a claim within

---

[1]   Counts Three and Six cite no statute, regulation, contract, or law that was allegedly violated or breached by the City.  Instead, they vaguely assert that the City "violated its own policies [and] procedures reg[arding] paying for inspection [and] other costs to Camelback Collision Center when [the City] [is] at fault" and that Plaintiff "had to evaluate [her] car herself" and the adjuster "never sent [her] a VALID OFFER." (Doc. 1-1 at 4.)  Counts Three and Six do not identify those unspecified policies or procedures.  The Court is therefore left to assume—as the City does (Doc. 7 at 6)—that these claims are brought pursuant to A.R.S. § 12-821.01.  If so, they are dismissed for the reasons stated herein.  To the extent they were intended to be based on some unspecified other law, regulation, or contract, the complaint violates Rule 8.

- 10 -

60 days; rather, it simply states that a claim is "deemed denied sixty days after the filing of the claim unless the claimant is advised of the denial in writing before the expiration of sixty days."

Accordingly, Counts Three through Seven are dismissed against the City.

IV. C&C's Motion to Dismiss

The Court agrees with C&C that "Plaintiff's first three claims for relief are not asserted against [C&C]." (Doc. 18 at 3. *See also* Doc. 25 at 2 n.1 [noting that Plaintiff's response references only the City with respect to her ADA claim].) Counts One through Three all allege actions taken by the City, and those claims make no mention of C&C or any "adjusters." (Doc. 1-1 at 4.) Accordingly, the Court considers only whether Counts Four through Seven should be dismissed against C&C.

A. **The Parties' Arguments**

C&C moves to dismiss pursuant to Rule 12(b)(6). (Doc. 18 at 1.) First, C&C argues that all four claims asserted against it should be dismissed because it is simply "the third-party claims administrator ('TPA') for the City that handled Plaintiff's property damage claim" and all four claims thus "constitute a prohibited 'direct action' under Arizona law." (*Id.* at 1, 4.) C&C argues that "Arizona law has long recognized for 40 years that an injured plaintiff may not assert a tort action against an insurer absent a judgment or assignment of the insured's right" and that "[t]his type of lawsuit," which is "known as a 'direct action'," is "prohibited in Arizona." (*Id.* at 5.)

Second, C&C argues that Counts Four, Five, and Seven "also fail because A.R.S. § 12-821.01 does not create any duty on [C&C] or its employees." (*Id.* at 6.) C&C argues that these claims "allege [C&C] violated A.R.S. § 12-821.01 because [C&C's adjuster] took longer than 60 days to respond to Plaintiff with a settlement offer and made allegedly 'invalid' settlement offers such that there was '[b]ad faith in processing insurance claims,'" but "A.R.S. § 12-821.01 does not require [C&C] to make any particular settlement offer or respond to Plaintiff's third-party demands within a particular timeframe." (*Id.*) As for Count Six, C&C argues that "Plaintiff cites no authority for any breach of any legal duty

between [C&C] and Plaintiff," and "[a]ssuming Plaintiff meant to cite a violation of A.R.S. § 12-821.01," Count Six fails for the same reasons as Counts Four, Five, and Seven. (*Id.* at 7.)

In response, Plaintiff asks the Court to deny C&C's motion to dismiss. (Doc. 23 at 10.) Plaintiff argues that C&C "has pointed out [the City] as the only responsible Party," so "Plaintiff [] included in [her] Response, *all Responsible Parties*." (*Id.* at 1.) As in her response to the City's motion to dismiss, Plaintiff cites A.R.S. § 12-820.01, A.R.S. § 12-821.01, and A.R.S. § 20-461. (*Id.* at 2-3.) Plaintiff also broadly cites the "Arizona Administrative Code" and "Insurance Bad Faith." (*Id.* at 3.)[2] Plaintiff then proceeds to re-outline the facts of her case. (*Id.* at 4-7.) Plaintiff also reiterates her ADA claims, claiming "[the] City was at fault." (*Id.* at 8-9.) Plaintiff clarifies she "is seeking Damages for [IIED] from" both the City and C&C, and she lists the elements of that cause of action under Arizona common law. (*Id.* at 9.) Plaintiff also attaches several emails. (*Id.* at 11-23.)

In reply, C&C reiterates that all claims brought against it "are barred by well-settled Arizona law prohibiting 'direct actions' against insurers and third-party claim administrators like [C&C] and because Plaintiff has not alleged facts or legal theories giving rise to any claim for relief." (Doc. 25 at 1.) Next, C&C reiterates its arguments regarding "direct actions" and the inapplicability of A.R.S. § 12-821.01. (*Id.* at 2-3.) C&C also argues that "Plaintiff's response includes two new claims for relief not in her Complaint: (1) a claim for IIED; and (2) a claim asserting violations of A.R.S. § 20-461." (*Id.* at 3.) C&C argues that the "Court cannot consider these new theories raised in Plaintiff's briefing" when ruling on a Rule 12(b)(6) motion, but in any event, "Plaintiff's claims under these theories are futile" because "[b]oth newly-asserted claims are prohibited by Arizona law barring direct action claims." (*Id.* at 3-4.) With respect to Plaintiff's references to A.R.S. § 20-461, C&C argues that it "is also futile because there is no private

---

[2] The Court notes that Plaintiff acknowledges that "Insurance Bad Faith" based on "[n]egligence in insurance claims processing" requires the "[b]reach of [a] Duty [owed] *to the Insured*." (Doc. 23 at 3, emphasis added.) Plaintiff, however, is not the insured party here.

right of action under this statute." (*Id.* at 4.) And with respect to "Plaintiff's IIED claim," C&C argues that Plaintiff fails to "cite any specific conduct alleged to be 'extreme or outrageous.'" (*Id.*)

B. **Analysis**

All four claims asserted against C&C are dismissed. First, Counts Four through Seven are barred as direct actions against an insurer. In Arizona, "[t]he general rule is that, in the absence of a contractual or statutory provision to the contrary, an injured person has no direct cause of action against a tortfeasor's insurance company." *Nationwide Mut. Ins. Co. v. Ariz. Health Care Cost Containment Sys.*, 803 P.2d 925, 928 (Ariz. Ct. App. 1990). "Direct actions against insurers are only permitted if the injured party has obtained an assignment of the insured's rights. This is because the insured, not the injured party, is the one in a fiduciary relationship with the insurer and the one that is harmed by an insurer's bad faith." *Blum v. Duran*, 2013 WL 5498244, *2 (D. Ariz. 2013) (citation omitted). *See also Ring v. State Farm Mut. Auto. Ins. Co.*, 708 P.2d 457, 460 (Ariz. Ct. App. 1985) (recognizing that "courts[] refus[e] to allow direct actions against insurers without the benefit of an assignment"). Here, there are no allegations of an assignment, so Counts Four through Seven are barred.

Counts Four through Seven also independently fail to the extent they are premised on violations of A.R.S. § 12-821.01. As discussed in Part III.D above, that statute imposes no obligation or duty on either the City or C&C. To the extent Count Six—which does not expressly mention A.R.S. § 12-821.01—is premised on a legal theory other than a violation of § 12-821.01, C&C is correct that "Plaintiff cites no contract, statute or law showing that this alleged conduct constitutes an actionable breach of any duty owed by [C&C] to Plaintiff." (Doc. 18 at 4.).

V. Leave To Amend

The City argues that Counts Three through Seven should be dismissed with prejudice and that amendment of Count Two would be futile. (Doc. 7 at 5, 7.) C&C argues that the Court should not allow Plaintiff to amend her complaint because "[a]ny amendment

would be futile because [C&C] cannot be liable for claims that are barred by well-settled Arizona law and for claims that allege non-existent duties." (Doc. 18 at 2.) Plaintiff does not explicitly request leave to amend. Nevertheless, the rule in the Ninth Circuit is that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.* 838 F.3d 958, 963 (9th Cir. 2016) (citation omitted).

The decision whether to grant leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Additionally, "[a] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (cleaned up). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *as amended* (May 22, 1992).

A.  **Claims Brought Against The City**

Applying those standards, the Court will allow Plaintiff to amend Count One as against the City in an attempt to allege facts sufficient to support a claim for negligence. The Court will also allow Plaintiff to amend Count Two as against the City in an attempt to allege facts sufficient to support an ADA claim under Title II.

To the extent Counts Three through Seven asserted against the City are premised on violations of A.R.S. § 12-821.01, amendment would be futile so those claims are dismissed without leave to amend. But to the extent Counts Three and Six—which do not expressly

mention A.R.S. § 12-821.01—were intended to be brought under some other law or statute, Plaintiff may amend her complaint in an attempt to assert that law or statute and allege facts supporting the elements of that law or statute.

B. **Claims Brought Against C&C**

Counts Four through Seven are dismissed without leave to amend as to C&C because amendment would be futile considering Arizona law's prohibition on direct actions against insurers by injured persons.

C. **Newly Identified Theories**

In her response to each motion, Plaintiff appears to attempt to raise new claims for violation of A.R.S. § 12-820.01 (Doc. 22 at 1-2; Doc. 23 at 2); violation of A.R.S. § 20-461 (Unfair Claims Settlement Practices Act) (Doc. 22 at 3; Doc. 23 at 3); and IIED (Doc. 22 at 5-6; Doc. 23 at 9). None of these claims are asserted in the complaint. (Doc. 1-1 at 4.)[3] The Court thus construes these arguments as requests to amend the complaint.

The first two requests are denied as futile. As for A.R.S. § 12-820.01, that section addresses absolute immunity for public entities and does not provide the basis for a cause of action. As for A.R.S. § 20-461—titled "Unfair claim settlement practices"—it is not immediately clear that this section would apply to the City. Regardless, and as C&C notes (Doc. 25 at 4), A.R.S. § 20-461(D) expressly provides that "[n]othing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state," and "[i]t is . . . the specific intent of this section to provide solely an administrative remedy to the director for any violation of this section or rule related to this section."

Finally, to the extent Plaintiff seeks to amend her complaint to add an IIED claim, the Court will permit her to do so. However, Plaintiff is cautioned that "[t]hreadbare recitals of the elements of a cause of action"—such as what Plaintiff has provided in her briefing (Doc. 22 at 5-6; Doc. 23 at 9)—will "not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff

---

[3] In the complaint, IIED is asserted as an "injury," not as an independent claim. (Doc. 1-1 at 4-5.)

- 15 -

must plead sufficient factual matter to support the elements of a claim for IIED.

VI.    Erhard and Cordary

The complaint names two C&C agents, Erhard and Cordary, as additional defendants. (Doc. 1-1.) "[A] leading commentator and a number of courts of appeals agree that, when considered together, [28 U.S.C.] § 1448 and Rule 81(c)(1) mean that the time to effect service specified in Federal Rule of Civil Procedure 4(m) starts to run upon removal to the federal district court, not the date the action was originated in state court." *Workman v. Bissessar*, 275 F. Supp. 3d 263, 269 (D.D.C. 2017) (internal quotation and citation omitted). Thus, Plaintiff had until October 23, 2025 (i.e., 90 days after the July 25, 2025 date of removal) to serve Erhard and Cordary.

There is no evidence that Erhard and Cordary have ever been served. (Doc. 12 at 1 n.1.) Moreover, in the preliminary order, Plaintiff was warned that "[p]roof of service must be filed with the Clerk of Court, in the form of an affidavit, promptly after service has been made" and that "the Court will dismiss this action, without further notice to Plaintiff(s), with respect to any Defendant that is not timely served." (Doc. 10 at 2.) Erhard and Cordary are thus dismissed under Rule 4(m) for failure to effect service.

Accordingly,

**IT IS ORDERED** that:

1.    The City's motion to dismiss (Doc. 7) is **granted**. Counts One and Two of the complaint are dismissed against the City with leave to amend. Counts Three through Seven are dismissed against the City without leave to amend to the extent they are premised on violations of A.R.S. § 12-821.01.

2.    C&C's motion to dismiss (Doc. 18) is **granted**. Counts Four through Seven are dismissed against C&C without leave to amend.

3.    The City's motion to strike (Doc. 27) is **granted**.

4.    Defendants Erhard and Cordary are **dismissed**.

5.    Within 14 days of the issuance of this order, Plaintiff may file a First Amended Complaint ("FAC"). The changes shall be limited to attempting to cure the

deficiencies identified in this order.  If Plaintiff does not file a FAC within 14 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 16th day of January, 2026.

Dominic W. Lanza
United States District Judge